UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
                                                :

SEAN BEST,                                  :

                                :

                        Plaintiff,         :         13 Civ. 0163 (JPO)

                                :

            -v-                         :         <u>OPINION AND ORDER</u>

                                :

LAWRENCE BELL, *et al.*,                 :

                                :

                        Defendants.       :

                                :

------------------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

       Plaintiff Sean Best alleges that, while he was in the custody of the City of New York, his rights were violated in two ways. First, City officials refused to give him the medications necessary to treat his mental illness. Second, when City officials released him from custody, they refused to give him a supply of his medications or information about how to obtain medication, housing, and other necessities (a process known as discharge planning). Best sues the City of New York, Prison Health Services, and twenty-four individual Defendants. The City has moved to dismiss the complaint as time-barred, or, in the alternative, because Best's substantive allegations are insufficient to state a claim for relief. For the reasons that follow, the Court holds that Best has stated a timely claim against the City with regard to denial of medication, but not discharge planning. The Court also holds, sua sponte, that Best's claims against the twenty-four individual Defendants are time-barred. The City's motion is therefore granted in part and denied in part.

I.      **Background**

Best alleges the following facts, which the Court assumes to be true for purposes of this motion.

City officials repeatedly denied Best's requests for the medication necessary to control his mental illness, thus perpetuating his cycle of contact with the criminal justice system.  Best has a psychiatric condition that has been diagnosed as severe mood disorder, schizoaffective disorder, and bipolar disorder, axis I, with brief psychotic features.  He requires medication for his manic phases, which come on abruptly.  When Best is not medicated during these phases, he suffers from racing thoughts, auditory and visual hallucinations, severe paranoia, insomnia, and suicidal thoughts.

Best's story begins on December 15, 2008, when he was in New York City custody.  A correction officer told Best that he should change into street clothes in preparation for a court appearance because it was likely that he would be released.  Best immediately told the officer that, because of his mental illness, he needed to visit the discharge planning unit for a supply of his medications (Lithium and Risperidone), information about how to find medication and housing outside of jail, and medical approval before he could be released from custody.  The officer said that someone would "call medical."  (Am. Compl. Stmt. of Facts at 1, Dkt. No. 24.)

No one from the discharge planning unit contacted Best before he was transported to court.  On his way to court, Best told every official he encountered—the officer who escorted him from his cell, the area captain who escorted him to the court transport area, the both officers in the court transportation area, both officers in the initial processing area at court, and the area captain in the initial processing area at court—that he had a serious persistent mental illness and that he needed medication before he was discharged.  He asked these officials to call Cynthia

Hill, a staff member at the Office of Mental Health, who would confirm that he required medication.  The officials responded variously with indifference ("I'm not doing it"), blame ("you should've took care of that beforehand, it's now shift change and it's time for you to go to court"), condescension ("you didn't come in here for that and everybody thinks they're going home"), and threats ("you could leave walking or on a stretcher, doesn't matter to me").  (*Id.* at 2–4.)  But no one responded with a phone call.

Best was released from custody at his court appearance that day.  He sought assistance at the courthouse, but found none—he was ultimately released without a coat, a metrocard, or information about how he might obtain his medication.  He was homeless.

Best found work as a receptionist for the PAC Program, a center offering various outpatient treatment programs.  A manic phase set in around February 5, 2009: Best began hearing voices and becoming paranoid.  He had been off his medication for almost sixty days.  His supervisor fired him due to his erratic behavior.

About a week later, on February 11, 2009, Best's symptoms had worsened, and he ran from an unmarked black car that he believed was sent by the devil to kill him.  The car made a U-turn and drove up to Best; two police sergeants got out of the car, struck him with their batons, and held a gun to his head.  Best explained that he ran because he thought they were going to kill him; he also said that he needed medication.  The sergeants said that he could "tell it to the judge."  (*Id.* at 5.)  They placed him under arrest.

Best explained his medical needs to the arresting sergeants, the desk sergeant at the precinct, and the officer who escorted him to central booking.  He specifically told these officials that he hadn't had medication for two months, his symptoms were worsening by the minute, and he felt suicidal.  Each of these officials declined to send Best to a hospital.  At central booking,

Best was taken to an emergency medical services station.  They asked if he needed medical attention; Best explained his condition and his need for medication, but the officer who escorted Best to the medical station told the EMT that he would not bring Best to Bellevue because Best would be released by the next day.  The EMT "moved [Best] along and cleared [him]."  (*Id.* at 6.)

Best was transferred to the custody of the City Department of Correction.  Again, he told every correction officer and captain he encountered that he had bipolar disorder, that he had been unmedicated for two months, and that he felt suicidal.  Again, he was met with indifference ("If you gon kill yourself do it[;] if you feel like you want to hurt someone do it") ("fuck off"), blame ("I was told that I should've told that to the N.Y.P.D.  I told him I did; I was told 'oh well then.'"), and threats ("touch one of my officers and we're going to touch on you").  (*Id.* at 6–7.) At some point, Best pleaded guilty to obstruction of governmental administration,[1] and his release date was set for February 13, 2009.  He informed both officers in the area where he was confined that he needed medication immediately, and that he needed a supply of medication and a discharge plan before he was released.  The officer in charge responded that "it was a holiday weekend, that tomorrow was Valentine's Day and nobody was dealing with [his] bullshit."  (*Id.* at 8.)  A captain came to check that Best was actually the person who was supposed to be released; again, Best explained his needs and asked the captain to contact Cynthia Hill or a doctor with the Office of Mental Health; again, the captain refused to assist Best.  He was discharged ten minutes later without medication or a discharge plan.  Best immediately went

---

[1] Best alleges that he pleaded guilty to obstruction of governmental agency.  Because this crime does not appear in the New York Penal Law, the Court assumes that he means obstruction of governmental administration.

next door to the Metropolitan Detention Center to ask that the desk officer contact the Office of Mental Health.  The desk officer threatened to arrest Best if he did not leave immediately.

Best describes his state of mind the following day as "hyper manic."  (*Id.*at 9.)  He became convinced that his girlfriend was trying to kill him.  After he spit at her and chased her through her house, she kicked him out.  The next few hours were "like a dream" to Best; he somehow wound up in the Lower East Side, where he was captured on video at 4:00AM on February 15, 2009.  (*Id.*)  Voices in his head were telling him that a stranger walking by was trying to kill him with a knife, so he "got to him first."[2]  At this point, Best had not slept for almost six days.  He was arrested, taken to Bellevue, and medicated.

Best was admitted to Metropolitan Detention Center the next day, on February 16, 2009.  Someone from the Office of Mental Health stated or noted that "Mr. Best is well known to jail based MH services."  (*Id.* at 10.)  Best again continually informed all housing area officers and captains he encountered about his symptoms and warned them that he was a danger to himself and others.  City officials did not provide Best with medication until February 26, 2009.  At some point during the period when Best was unmedicated, his attorney appears to have represented to the trial court—over Best's objections—that Best waived his right to testify before the grand jury.

Best does not make any allegations about the period between February 26, 2009 and January 11, 2010.  On January 11, when Best was transferred to Rikers Island, he felt the onset of a manic episode.  The medical intake personnel at Rikers were familiar with Best, and they knew that he had been prescribed medication.  This prescription was also in his medical file.  Best requested his medication from the intake personnel, but they told him he would need to wait

---

[2] This quote is the most specific fact Best pleads about the nature of the February 15 assault.

to see staff members from the Office of Mental Health.  Best explained that he "was going crazy and that [his] brain was moving [too] fast," so he urgently needed medication—he also explained that he had a court appearance the next morning, so he would not be able to see staff from the Office of Mental Health the next day.  The intake personnel did not assist Best, and the next morning, he was taken to court unmedicated.

Under pressure from his attorney and in fear for his life (it is unclear why; perhaps as a result of his mental illness), Best pleaded guilty to the February 15 assault.  He tried to tell the judge that he was unmedicated and incapable of entering a guilty plea, but she said she "[didn't] want to hear it."  (*Id.* at 11.)  Best was remanded to City custody on January 12, 2010.  City officials did not provide Best with medication until January 16, 2010.

At his next court appearance on January 26, 2010, Best attempted to withdraw his guilty plea.  His request was denied and he was sentenced to an eight-year term of imprisonment and a five-year term of postrelease supervision.

Best filed this action on January 2, 2013, and amended his complaint on July 23, 2013.  The original complaint asserted claims against fourteen Defendants, including the City, but failed to allege any conduct by the Defendants that fell within the limitations period.  Best amended his complaint in July to allege that City officials denied him medication in January 2010.  He now asserts claims against twenty-five Defendants, most of whom are unidentified, for violation of his right to medical care and discharge planning under the 8th and 14th Amendments to the United States Constitution, Article I, §§ 5–6 of the New York State Constitution, New York Mental Hygiene Law § 29.15, and 14 N.Y.C.R.R. § 587.1 *et seq*.  He also claims that Defendants discriminated against him on the basis of his mental illness in violation of Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act.

6

The City has moved to dismiss this action because Best's claims are time-barred, or, in the alternative, for failure to state a claim.  The City also argues that, if the Court dismisses Best's federal claims, it should decline to exercise supplemental jurisdiction over Best's remaining state law claims.

## II.   Discussion

### A.   Legal Standard

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short, plain statement showing that the pleader is entitled to relief.  A complaint states a claim for relief if the claim is plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To review a complaint for plausibility, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor.  *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555).  But the court need not accept "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions.  *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).  After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief.  *Id.*

In cases brought by a pro se plaintiff, courts are further constrained to construe the complaint to raise the strongest claims it suggests.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010); *cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (requiring liberal construction of pro se pleadings even after *Twombly*) (citing former Fed. R. Civ. P. 8(f), now Rule 8(e): "Pleadings must be construed so as to do justice.").  The rule favoring liberal construction of pro se submissions is especially applicable to civil rights claims.  *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002).

### B.    Statute of Limitations

It is an affirmative defense that a claim is barred by the applicable statute of limitations; in other words, the party asserting this defense bears the burden of proving it.  *Abbas v. Dixon*, 480 F.3d 636, 640 (2007).  Because a motion to dismiss tests the sufficiency of a pleading, it is not appropriate to grant a motion to dismiss on limitations grounds unless the applicability of the defense is plain from the face of the complaint.  *Jones v. Bock*, 549 U.S. 199, 215 (2007) (dictum); *Amarosa v. AOL Time Warner Inc.*, 409 Fed. App'x 412, 417 (2d Cir. 2011) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)).

The limitations period for each of Best's claims appears to be three years.  Three years is certainly the limitations period for claims arising in New York under § 1983, Title II of the Americans with Disabilities Act, and § 549 of the Rehabilitation Act.  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (§ 1983 claims arising in New York); *Harris v. City of N.Y.*, 186 F.3d 243, 247–48 (2d Cir. 1999) (Rehabilitation Act claims arising in New York); *Ortiz v. City of N.Y.*, No. 12 Civ. 3118 (HB), 2012 WL 6200397, *9 (S.D.N.Y. Dec. 12, 2012) (citing *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 592–93 (S.D.N.Y. 2009)) (Title II ADA claims arising in New York).  Neither party cites authority discussing the limitations period that applies to claims under Mental Hygiene Law § 29.15, 14 N.Y.C.R.R. § 587.1 *et seq.*, or Article I, §§ 5 and 6; however, subject to exceptions not relevant here, New York's general statute of limitations for actions to recover damages for a personal injury is three years.  N.Y. C.P.L.R. § 214.

To determine whether Best's claims are timely, the Court must (i) determine the date on which the limitations period began running, (ii) determine whether the limitations period was tolled at any point, and then (iii) if necessary, determine whether the Court may consider the

allegations in the amended complaint to have been made on the date Best filed the original complaint.

### 1.      Claim Accrual

A limitations period begins running on the date a claim accrues.  Federal law determines the date on which a federal claim accrues; claims under § 1983, the Americans with Disabilities Act, and the Rehabilitation Act accrue when the plaintiff knows or has reason to know of the injury for which he is suing.  *See Collins v. Miller*, 338 Fed. App'x 34, 36 (2d Cir. 2009) (quoting *Singleton v. City of N.Y.*, 632 F.2d 185, 191 (2d Cir. 1980)) (discussing § 1983 claims); *Harris v. City of N.Y.*, 186 F.3d 243, 247 (2d Cir. 1999) (ADA and Rehabilitation Act).  New York claims subject to the limitations period in N.Y. C.P.L.R. § 214 accrue on the date when all facts necessary to the cause of action have occurred, such that the plaintiff could file suit and obtain relief.  *Blanco v. Am. Tel & Tel. Co.*, 90 N.Y.2d 757, 767 (1997) (citing *Aetna Life & Cas. Co. v. Nelson*, 67 N.Y.2d 169, 175 (1986)).  This is generally the date of injury.  *Id.*

Best makes two arguments that his claims accrued after the dates on which he was denied medication and discharge planning.  First, with regard to discharge planning, he argues that he did not know of his injury until he learned that the City had a legal duty to provide him with discharge planning.  This argument fails under federal and state law.  Under federal law, the date that Best knew of his injury is not the date he read *Wakefield v. Thompson*[3] and learned that he may have a constitutional right to discharge planning.  It is the date that he learned of the underlying injury itself—the date he understood that City officials had released him without a discharge plan.  *Eagleston v. Guido*, 41 F.3d 865, 871–73 (2d Cir. 1994).  Best's allegations

---

[3] 177 F.3d 1160 (9th Cir. 1999).

make it clear that he understood what was going on each time City officials released him without a plan. *Cf. Ormiston v. Nelson*, 117 F.3d 69, 72 (2d Cir. 1997) (holding that mental incapacity may delay the accrual of a § 1983 due process claim if a plaintiff was "incompetent to comprehend" that he had been deprived of his liberty). It is not relevant whether Best knew that he may have a constitutional right to discharge planning. This is what is meant by "knowledge of the law" in the holding Best quotes in his brief: "[A]ccrual . . . does not depend on [] knowledge of the law, but rather on . . . knowledge of the injury." *Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 437 (S.D.N.Y. 2011). "Knowledge of the law" is knowledge of possible legal claims—such as the claim that discharge planning is required by the Constitution. "Knowledge of the injury" is knowledge of the harm done—denial of discharge planning. Best immediately had knowledge of his injury each time he was released without a discharge plan.

Best's argument likewise fails under New York law. The day that City officials released Best without a discharge plan, each element of his claim was satisfied, and he could have filed suit.

Second, Best argues that the City has committed a continuing violation of his rights. The continuing violation doctrine is an exception to the normal rule for accrual of § 1983 claims.[4] *Shomo v. City of N.Y.*, 579 F.3d 176, 181–82 (2d Cir. 2009). When a plaintiff's rights are violated as a result of a series of acts, one single act may not be sufficient to prove the violation. For that reason, if a plaintiff alleges a policy of deliberate indifference, the limitations period

---

[4] The analogous rule under New York law tolls the limitations period to the commission of the final wrongful act rather than delaying the date of accrual. *D'Antonio v. Metropolitan Transp. Auth.*, No. 06 Civ. 4283 (KMW), 2010 WL 1257349, *5 (S.D.N.Y. Mar. 31, 2010) (quoting *Statistical Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468, 484 (S.D.N.Y. 2000)).

does not begin to run until the last act taken in furtherance of that policy. *Id.* (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)).

The amended complaint clearly alleges that the City has a policy of deliberate indifference toward prisoners' medical needs when they are initially transferred into City custody. The last acts taken in furtherance of this policy were on January 15, 2010, when Best was transferred back into City custody and officials refused to give him his medication. Therefore, Best's claim based on this policy accrued January 15, 2010, and it is not barred by the statute of limitations.[5]

The City's argument that "a lack of temporal continuity is fatal to the continuing violation doctrine" as applied in this case is unpersuasive. (City's Mem. at 14 (quoting *Barnes v. Pozzi*, No. 10 Civ. 2554 (JGK), 2012 WL 3155073, *5 (S.D.N.Y. Aug. 3, 2012) (alteration omitted)).) Best was released from City custody and transferred to State custody between the first and last acts in furtherance of the City's alleged policy, and in this sense, his right to adequate medical care was not continually violated by the City. But it makes no sense to let the City off the hook because they let Best out of jail. This approach loses sight of the function that discrete acts serve in a continuing violation pleading. The pleading standard for a continuing violation claim does not require the plaintiff to allege multiple discrete acts near one another in

---

[5] The Court also assumes, without holding, that the amended complaint alleges that the City had a policy of disregarding its duty under federal and state law to provide mentally ill prisoners with discharge planning, including a supply of medication, before they were released from custody. The last acts taken in furtherance of this policy were on February 13, 2009, when City officials released Best from custody without any discharge plan. Best's claim based on this policy would therefore accrue February 13, 2009. Such a claim is barred by the statute of limitations unless the limitations period was tolled. Likewise, with regard to Best's state law claims about discharge planning, New York's continuing wrong doctrine would toll the limitations period to February 13, 2009. The result is the same: the claims are time-barred unless the limitations periods was tolled under some other doctrine.

time.[6]  The standard requires the plaintiff to state a plausible claim that the defendant had an ongoing unlawful policy.  *Shomo*, 579 F.3d at 182 ("To assert a continuing violation for statute of limitations purposes, the plaintiff must allege both the existence of an ongoing policy of deliberate indifference to his or her serious medical needs and some non-time-barred acts taken in the furtherance of that policy.") (quotation marks and alteration omitted).  One method of pleading an ongoing policy is to allege discrete acts, close together in time, each of which were in furtherance of the policy.  But this is just one method.  If a plaintiff was in and out of custody over a period of years, and he alleges that *every time he was in custody*, his rights were violated in the same way, this is sufficient to plead that the custodian had an ongoing unlawful policy.

For the foregoing reasons, the limitations period for the claims alleging a continuing violation of Best's right to medical care accrued January 15, 2010, the date of the final alleged denial of medication.  The limitations period for the claims alleging a continuing violation of Best's right to discharge planning accrued February 13, 2009, the date of the final alleged denial of discharge planning.  And the limitations periods for the claims against the individual Defendants—which arise out of discrete acts, not continuing violations—began running on the

---

[6] *Barnes*, the only case the City cites in support of this proposition, relies on authority that ultimately derives from two Second Circuit cases: *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998) and *Weeks v. New York State Division of Parole*, 273 F.3d 76, 84 (2d Cir. 2001).  *Quinn* held that a continuing violation could be found based on "proof of specific ongoing discriminatory policies or practices, *or* [] specific and related instances of discrimination . . . ."  159 F.3d at 766 (emphasis added).  In *Weeks*, the plaintiff alleged that multiple discrete acts "amounted to" a discriminatory policy; the court held that the alleged acts were isolated and therefore held that "the complaint identifies no discriminatory policy . . . and alleges no toleration of incidents that would be tantamount to such a policy."  273 F.3d at 84.  *Weeks* specified that a two-year gap between alleged acts is insufficient to prove a policy "[a]bsent unusual circumstances."  *Id.* (emphasis added).  These cases both demonstrate that pleading discrete acts close together in time is a method of pleading a continual policy, not a requirement for pleading a continual policy.  To the extent that *Barnes* forecloses continuing violation claims against a custodian that are interrupted by breaks in custody, this Court disagrees with that holding.

12

dates of Best's injuries, the latest of which was February 13, 2009.  (Best does not sue any individual defendant who denied him medication in January 2010.)

### 2.    Tolling

Best makes two arguments that the limitations periods for his claims should be tolled. Because all of Best's federal claims borrow their limitations periods from New York law, New York tolling principles apply unless they are inconsistent with federal law.[7]  *Bd. Of Regents v. Tomanio*, 446 U.S. 478, 483–86 (1980) ("'[B]orrowing' logically include[s] rules of tolling . . . .") (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–64 (1975)).

First, Best argues that the limitations periods should be tolled due to his insanity.  New York law tolls three-year limitations periods if the plaintiff is insane at the time his claim accrues and his insanity persists for the entire three-year period.  N.Y. C.P.L.R. § 208.  The standard for "insanity" under this provision is strict.  *La Russo v. St. George's University Sch. of Med.*, __ F.3d __, 2014 WL 814919, *8 (2d Cir. Mar. 4, 2014).  The insanity toll applies only for those "who are unable to protect their legal rights because of an over-all inability to function in society."  *Id.* (quoting *McCarthy v. Volkswagen of Am., Inc.*, 55 N.Y.2d 543, 548 (1982)). Courts look to the plaintiff's conduct during the limitations period to determine whether he was insane within the meaning of the rule.  *Id.* (citing *Dumas v. Agency for Child Dev.*, 569 F. Supp. 831, 834 n.5 (S.D.N.Y. 1983) (collecting cases)).  Mental illness entailing apathy, depression, posttraumatic neurosis, psychological trauma or a general difficulty functioning is not sufficient; "the plaintiff must be totally unable to function as a result of a severe and incapacitating disability."  *Id.* (quotation marks omitted) (collecting cases and quoting *Swartz v. Berkshire Life*

---

[7] Neither party suggests that the tolling provisions at issue here are inconsistent with the policies underlying any of Best's federal claims.

*Ins. Co.*, No. 99 Civ. 9462 (JGK), 2000 WL 1448627, *5 (S.D.N.Y. Sept. 28, 2000)). If a plaintiff becomes lucid for a period long enough to protect his rights, the insanity toll is lost— even if he lapses back into insanity within the limitations period. *Carter v. Doe*, No. 05 Civ. 8432 (NRB), 2006 WL 2109461, *3 (S.D.N.Y. July 26, 2006) (quoting *Graboi v. Kibel*, 432 F. Supp. 572, 579 (S.D.N.Y. 1977) ("If the plaintiff had a lucid interval of significant duration, proceeded and followed by a period of insanity, the toll is lost and is not resurrected [if] a plaintiff relapses into insanity.") (alteration omitted)).[8]

The Court need not determine whether Best was insane at the time each of his claims accrued. The allegations in the amended complaint establish that he was lucid for a significant period of time before the end of the limitations period for each of his claims. Throughout the amended complaint, he describes his manic phases as just that—phases. He alleges that his manic phases come on suddenly, as an abrupt break from reality rather than a continual impairment. The gravamen of his claims is that, if he had received medication during his manic phases, he would not have been overwhelmed by his symptoms. (Am. Compl. Stmt. of Facts at 17 ("[The] crime . . . would've never happened had plaintiff been properly medicated.").) Implicit in this position is the concession that, when Best does receive medication during a manic phase, he is capable of controlling his symptoms. Best was medicated within the limitations

---

[8] Best argues that *Carter* and *Graboi* incorrectly interpret New York law because "the test is not whether the decedent ever attained lucidity during that period, but whether, generally, he was unable to protect his legal rights because of an over-all inability to function in society." *Schulman v. Jacobowitz*, 19 A.D.3d 574, 577 (2d Dep't 2005) (quoting *McCarthy*, 55 N.Y.2d at 548) (quotation marks and alteration omitted). But *Carter* and *Graboi* specify that a period of lucidity must be of "significant duration," language that can be traced back to *Jordan v. State*, which describes the relevant period as one "of sufficient duration to afford a party a reasonable opportunity to take action in furtherance of his rights." 56 Misc. 2d 1032, 1034–35 (N.Y. Ct. Claims 1968). This is consistent with the passage that Best quotes from *Schulman*. The question is whether the plaintiff was capable of protecting his rights during the period of lucidity, considering, among other things, the duration of that period.

period.  He describes the period after he was medicated as "coming back to normalcy."  (*Id.* at 17.)

Best does allege that, in the year following his January 26, 2010 sentence, he became seriously depressed.  He attempted to overdose on heroin in August 2010 and attempted to hang himself in November 2010.  Furthermore, sometime in 2010, his doctors advised him to stop taking his medication because it had caused him to develop diabetes.  He started "receiving intense therapy in place of the [medication]," which he took only in emergency situations.  (*Id.* at 18.)  Best's suicide attempts are signs of serious illness that the Court does not wish to trivialize.  Changes in mental health treatment can also be major life events that should not be taken lightly.  Nevertheless, according to New York law, it is possible to suffer from a serious mental illness without losing the capacity to protect one's rights within the meaning of § 208.  Best describes his depression as follows: "I couldn't function[.]  [T]hough I had good days[,] most were bad."  (*Id.*)  To the extent that this description is ambiguous about the duration and significance of periods Best describes as "good days," his conduct during the following year confirms that he was able to protect his rights within the limitations periods.  In 2011, a year that was within the limitations period for all of his claims, he alleges that he learned of his right to sue and "with due diligence . . . began to seek [] departmental as well as medical/OMH [records]."  (*Id.* at 18.)  Best was not insane within the meaning of § 208 if he was conducting legal research and gathering evidence for litigation.  Therefore, because this conduct falls within the limitations period for all of Best's claims, and because Best's mental illness affected him in discrete phases throughout the limitations period, the toll was lost for all of his claims.

Second, Best argues that he is entitled to equitable tolling.  Equitable tolling is a federal doctrine; the most similar doctrine under New York law is equitable estoppel.  *See Shared*

*Commc'ns Servs. of ESR, Inc. v. Goldman, Sachs & Co.*, 38 A.D.3d 325, 325 (1st Dep't 2007)

("The doctrine of equitable tolling is generally applied to federal causes of action in New

York."); *Giordano v. College of Staten Island*, No. 102603/10, 2011 N.Y. Slip Op. 51377(U), *1

(Sup. Ct. Richmond Cnty. July 22, 2011) ("There is no recognized applicable doctrine in New

York."); *but cf. Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (appearing to treat

the doctrines as the same).  Equitable estoppel applies to prevent a defendant from benefitting

from its own misconduct.  If a defendant's affirmative misconduct causes the plaintiff to delay

filing a lawsuit, the defendant cannot later claim the benefit of the statute of limitations.

*Zumpano v. Quinn*, 6 N.Y.3d 666, 673 (2006) (quoting *Gen. Stencils v. Chiappa*, 18 N.Y.2d 125,

128 (1966)).  The defendant's misconduct must be "egregious."  *Safarti v. Antigua & Barbuda*,

923 F. Supp. 2d 72, 77 (D.D.C. 2013) (quoting *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236,

250 (S.D.N.Y. 2000)).  And the plaintiff must demonstrate that he brought suit within a

reasonable amount of time after he was free of the effects of the defendant's misconduct.  *Id.*

(quoting *Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995)).

        The amended complaint alleges few facts in support of equitable estoppel.  The Court

assumes for the sake of argument that denying medication to Best for brief periods in February

2009 and January 2010, when he was in City custody, is affirmative, egregious misconduct

attributable to the City.  The Court also assumes, for the sake of argument, that the inadequacy of

law library access for City prisoners in punitive segregation constitutes affirmative, egregious

misconduct attributable to the City.[9]  Even if this were so, nothing in Best's papers suggests that

he could bear the burden of establishing that he brought this action within a reasonable time after

---

[9] Facts about law library access at Rikers Island do not appear in the amended complaint;
however, Best raises this argument in his opposition brief, and the Court addresses it here in
anticipation of Best's amending his complaint in response to this opinion.

he was free of the effects of the City's misconduct.  He was in State custody—not City custody—for most of the time between February 2009 and the date he filed this action, January 2, 2013.

Most of Best's claims are therefore untimely.  He filed this action on January 2, 2013. The limitations period for his claims against the individual Defendants began running, at the latest, on February 13, 2009.  This is also the date the limitations period began running for his claims alleging a continuing violation of his right to discharge planning.  Because limitations periods for these claims expired before Best filed suit, the claims are barred by the statute of limitations.

The limitations period for Best's claims alleging a continuing violation of his right to adequate medical care, however, began running on January 15, 2010.  Best filed suit on January 2, 2013, which is within the limitations period for this claim.  But the original complaint did not include allegations about any conduct in January 2010: Best made these allegations in the amended complaint he filed July 23, 2013, which is after the limitations period expired. Therefore, his claims arising out of the January 2010 denial of medication are timely only if the Court considers them to have been filed as of the date of the original complaint.  This is known as "relation back."

### 3.      Relation Back

Rule 15 of the Federal Rules of Civil Procedure allows the Court to treat allegations in an amended complaint as if they were made on the date of the original complaint—the allegations in the amended complaint are said to "relate back" to the date the original complaint was filed. Rule 15(c)(1) says that amendments may relate back under two conditions relevant here: one, if the law providing the applicable statute of limitations would allow relation back, and two, if the

amendment asserts a claim arising out of the same conduct set out in the original complaint.  The

law providing the applicable statute of limitations in this case for Best's state and federal claims

is New York law.  *Hogan*, 738 F.3d at 518 (holding that for § 1983 claims, although federal law

governs date of accrual, limitations period and tolling rules are borrowed from state law, and

therefore Rule 15(c)(1)(a) gave plaintiff the benefit of New York rules for relation back); *cf.*

*Morse v. University of Vermont*, 973 F.2d 122, 127 (2d Cir. 1992) (holding that Rehabilitation

Act, like § 1983, borrows state statutes of limitations for personal injury actions); *Ortiz*, 2012

WL 6200397 at *9 (citing *Maccharulo*, 643 F. Supp. 2d at 592–93) (holding same for Title II

ADA claims).   In other words, if relation back would be permitted under New York law *or*

federal law, the amendments relate back.

      That point of law is academic in this case, because the New York and federal standards

that apply to Best's amendments are nearly identical.  *See Scantek Med., Inc. v. Sabella*, 583 F.

Supp. 2d 477, 489 (S.D.N.Y. 2008) (treating the standards as the same).  Under New York law,

amendments relate back so long as the original complaint "give[s] notice of the transactions,

occurrences, or series of transactions or occurrences, to be proved pursuant to the amended

pleading."  N.Y. C.P.L.R. § 203(f).  And the federal rules permit amendments to relate back so

long as the original complaint "set[s] out" the "conduct, transaction, or occurrence" that gave rise

to the claims in the amendment.  Fed. R. Civ. P. 15(c)(1)(B).  The driving principle behind both

of these rules is that a defendant should not be able to invoke the statute of limitations if he was

already on notice of the events giving rise to the plaintiff's claim during the limitations period.

*See, e.g.*, *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983) (quoting *Tiller v.*

*Atl. Coast Line R.R.*, 323 U.S. 574, 580–81 (1945) ("The cause of action now, as it was in the

beginning, is the same.  There is no reason to apply a statute of limitations when, as here, the

respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events alleged in the original complaint.") (alterations omitted)).

Construing both the original and amended complaints to raise the strongest claims they suggest, it is clear that the amendments to the complaint arise out of the same conduct (or series of occurrences) that Best pleaded in his original complaint. Best alleges that the City consistently denies him the medication he needs when he has a manic phase. This is the theme of his original complaint, and the allegations in his amendments—that the City yet again denied him medication when he had a manic phase in January 2010—constitute just one more instance of the City's ongoing failure to meet their legal obligation to treat Best's mental illness. Best's claims against the City and Prison Health Services arising out of the January 2010 denial of medication are therefore timely.

**C.     Inadequate Medical Care Claims Under § 1983**

The City argues that the amended complaint fails to state a constitutional claim. This argument has no merit. Prisoners are entitled to adequate medical care, whether they are pretrial detainees, who have a due process right to be free from punishment, or convicted prisoners, who have a right to be free from cruel and unusual punishment. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). A city violates these rights if it fails to train its employees or otherwise sanctions a custom that leads to officials acting with deliberate indifference to prisoners' serious medical needs. *See id.* at 69–72 (applying deliberate indifference standard to medical care claims filed by pretrial detainees and convicted prisoners); *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (holding that municipalities are liable "where [the] organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

The City grossly mischaracterizes Best's allegations in a way that the Court need not engage with here.  This opinion has already discussed why Best states a plausible claim that his injury was the result of an ongoing City policy.  He also alleges an independent constitutional violation.  In January 2010, City officials disregarded a known risk to Best's mental health: the officials knew of his diagnosis, and he told them that he was "going crazy and that [his] brain was moving [too] fast," yet they ignored his pleas for medication.  (Am. Compl. Stmt. of Facts at 11.)  Best's mental health needs were sufficiently serious, and it is disconcerting that the City suggests otherwise.[10]  Best alleges that, if he remains unmedicated during a manic phase, he becomes suicidal and succumbs to paranoia so severe that he becomes a danger to those around him.  Even if Best was not a danger to himself or others, the need to prevent the continually worsening symptoms he describes—hallucinations, severe paranoia, suicidal thoughts, and mania interfering with normal functioning—is sufficiently serious to trigger Eighth Amendment protection.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]enial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.  The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.") (citation and quotation marks omitted); *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and

---

[10] (City's Opp. at 22 & n.4 ("[T]he only harm plaintiff alleges . . . was that it caused him to plead guilty 'in a disorganized state of mind.' . . . [T]he only injury that plaintiff alleges . . . upon his re-arrest in February of 2009 was that he was not 'in the right state of mind' . . . .").)

substantial pain.") (citation, quotation marks, and alteration omitted);  *Smith v. Carpenter*, 316 F.3d 178, 188 (2d Cir. 2003) ("[A]ctual physical injury is not necessary in order to demonstrate an Eighth Amendment violation."); *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) ("Courts have repeatedly held that treatment of a psychiatric or psychological condition may present a serious medical need." (quoting *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987) (quotation marks omitted))).  Best has stated an Eighth Amendment claim against the City.

### D.    ADA and Rehabilitation Act Claims

On page 23 of its brief, the City simply asserts that Best "does not plausibly allege a violation of any of these federal rights."  Insofar as this can be characterized as a motion to dismiss these claims, it is denied.

### E.    Leave to Amend

The Court grants Best leave to amend his complaint to allege facts demonstrating that his claims are timely.  If Best chooses to file a second amended complaint, he must do so within thirty days.  It is not necessary to attach evidence to the second amended complaint; rather, Best need only make a short, plain statement of a plausible claim for relief against each Defendant.

Best indicated in his papers that he intends to move for summary judgment at some time in the near future.  The usual practice is for parties to gather evidence in discovery, then use that evidence to move for (or oppose) summary judgment.

## III.   Conclusion

The Supreme Court has written that "[p]rocedural requirements . . . are not to be disregarded by courts out of a vague sympathy for particular litigants. . . . In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."  *Baldwin Cnty.*

*Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam) (citation, quotation marks and alteration omitted).  This Court is obligated to abide by that principle.  The discharge planning claims will end with this opinion, but Sean Best has a valid point that is worth hearing.  If City officials had followed New York's well-reasoned policy of helping mentally ill prisoners prepare for reentry into society, things might have turned out quite differently.  In all likelihood, an innocent victim would not have suffered what appears to have been a serious physical attack.  And Best would have had a better chance to rebuild his life and contribute to society.  Instead, society is burdened with another crime and another cycle of contact with the criminal justice system.  A man was assaulted, and Best has lost eight more years of his life to incarceration.  These are very real costs.

For the reasons stated in this opinion, the City's motion to dismiss Best's claims based on denial of discharge planning is GRANTED.  In all other respects it is DENIED.  The Court dismisses Best's claims against all individual defendants sua sponte.  Best may file an amended complaint within thirty days.  The Clerk of Court is respectfully directed to terminate all motions pending in this case.

SO ORDERED.

Dated: New York, New York
       March 28, 2014

J. PAUL OETKEN
United States District Judge